UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

LOVIE PALMER,

      Plaintiff,

v.                                    Case No. 1:14-CV-777

COMMISSIONER OF SOCIAL          HON. GORDON J. QUIST
SECURITY,

      Defendant.
_____/

## OPINION

This is an action pursuant to Section 405(g) of the Social Security Act, 42 U.S.C. § 405(g), for judicial review of a final decision of the Commissioner of Social Security denying Plaintiff's application for Disability Insurance Benefits (DIB) under Title II of the Social Security Act. Plaintiff also filed an application for Supplemental Security Income (SSI) under Title XVI of the Social Security Act, and the Commissioner concluded that Plaintiff was entitled to such as of August 3, 2012. Section 405(g) limits the Court to a review of the administrative record, and provides that if the Commissioner's decision is supported by substantial evidence, it shall be conclusive. Because the Court concludes that the Commissioner's decision is supported by substantial evidence and properly applied the applicable legal standards, the Court will affirm the Commissioner's decision to deny benefits.

### BACKGROUND

Plaintiff was born on February 2, 1958, and worked as a stock clerk, a hand packager, a child care provider, and a nurse's assistant. (A.R. 189, 230, 247.) Plaintiff filed applications for DIB and SSI benefits on January 27, 2011, alleging that she had been disabled since September 1, 2009.

(A.R. 178.) Plaintiff alleged that she was disabled due to severe back pain, a misplaced disc in her lower back, arthritis in her left hand, and a chipped bone in her left knee. (A.R. 218.) After the claim was initially denied, Plaintiff requested a hearing. On November 28, 2012, Administrative Law Judge (ALJ) Michael S. Condon conducted a hearing, at which Plaintiff and David J. Holwerda, an impartial vocational expert, testified. (A.R. 18.) On March 1, 2013, ALJ Condon issued a decision finding that Plaintiff was not disabled under Sections 216(i) and 223(d) of the Act through the date last insured, December 31, 2010, but that Plaintiff was disabled under Section 1614(a)(3)(A) of the Act as of August 3, 2012—the date Plaintiff had a total knee replacement. (A.R. 31.)

The Appeals Council declined to review the ALJ's determination, rendering it the Commissioner's final decision in the matter. (A.R. 1–5.) Plaintiff subsequently initiated this action pursuant to 42 U.S.C. § 405(g).

## STANDARD OF REVIEW

The Court's jurisdiction is confined to a review of the Commissioner's decision and of the record made in the administrative hearing process. *See Willbanks v. Sec'y of Health & Human Servs.*, 847 F.2d 301, 303 (6th Cir. 1988). The scope of judicial review in a social security case is limited to determining whether the Commissioner applied the proper legal standards in making her decision and whether there exists in the record substantial evidence supporting that decision. *See Brainard v. Sec'y of Health & Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989).

The Court may not conduct a de novo review of the case, resolve evidentiary conflicts, or decide questions of credibility. *See Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). It is the Commissioner who is charged with finding the facts relevant to an application for disability benefits, and her findings are conclusive provided they are supported by substantial evidence. *See* 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla, but less than a preponderance. *See Cohen*

*v. Sec'y of Dep't of Health & Human Servs.*, 964 F.2d 524, 528 (6th Cir. 1992) (citations omitted). It is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Bogle v. Sullivan*, 998 F.2d 342, 347 (6th Cir. 1993). In determining the substantiality of the evidence, the Court must consider the evidence on the record as a whole and take into account whatever in the record fairly detracts from its weight. *See Richardson v. Sec'y of Health & Human Servs.*, 735 F.2d 962, 963 (6th Cir. 1984).

As has been widely recognized, the substantial evidence standard presupposes the existence of a zone within which the decision maker can properly rule either way, without judicial interference. *See Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (citation omitted). This standard affords to the administrative decision maker considerable latitude, and indicates that a decision supported by substantial evidence will not be reversed simply because the evidence would have supported a contrary decision. *See Bogle*, 998 F.2d at 347; *Mullen*, 800 F.2d at 545.

### ANALYSIS OF THE ALJ'S DECISION

The social security regulations articulate a five-step sequential process for evaluating disability. *See* 20 C.F.R. §§ 404.1520(a)–(f), 416.920(a)–(f).[1] If the Commissioner can make a dispositive finding at any point in the review, no further finding is required. *See* 20 C.F.R. §§

---

[1] 1. An individual who is working and engaging in substantial gainful activity will not be found to be "disabled" regardless of medical findings (20 C.F.R. 404.1520(b));

2. An individual who does not have a "severe impairment" will not be found "disabled" (20 C.F.R. 404.1520(c));

3. If an individual is not working and is suffering from a severe impairment which meets the duration requirement and which "meets or equals" a listed impairment in Appendix 1 of Subpart P of Part 404, a finding of "disabled" will be made without consideration of vocational factors (20 C.F.R. 404.1520(d));

4. If an individual is capable of performing work he or she has done in the past, a finding of "not disabled" must be made (20 C.F.R. 404.1520(e));

5. If an individual's impairment is so severe as to preclude the performance of past work, other factors including age, education, past work experience, and residual functional capacity must be considered to determine if other work can be performed (20 C.F.R. 404.1520(f)).

3

404.1520(a), 416.920(a). The regulations also provide that if a claimant suffers from a nonexertional impairment as well as an exertional impairment, both are considered in determining residual functional capacity. *See* 20 C.F.R. §§ 404.1545, 416.945.

The Plaintiff bears the burden of establishing the right to benefits, *see Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 540 (6th Cir. 2007), and she can satisfy her burden by demonstrating that her impairments are so severe that she is unable to perform her previous work, and cannot, considering her age, education, and work experience, perform any other substantial gainful employment existing in significant numbers in the national economy. *See* 42 U.S.C. § 423(d)(2)(A); *Cohen*, 964 F.2d at 528. While the burden of proof shifts to the Commissioner at step five of the sequential evaluation process, Plaintiff bears the burden of proof through step four of the procedure, the point at which his residual functioning capacity (RFC) is determined. *See Bowen v. Yuckert*, 482 U.S. 137, 146 n.5, 107 S. Ct. 2287, 2294 n.5 (1987); *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997) (ALJ determines RFC at step four, at which point claimant bears the burden of proof).

Applying the five-step sequential evaluation process, the ALJ found that Plaintiff had not engaged in substantial gainful activity since the alleged onset date. The ALJ then determined that since the alleged onset date, Plaintiff suffered from severe impairments, including left knee degenerative joint disease, lumbar degenerative disc disease, left upper extremity osteoarthritis, headaches, and obesity. (A.R. 20.) The ALJ further found that as of August 3, 2012, Plaintiff's severe impairments included left knee degenerative joint disease—status post total knee arthroplasty, lumbar degenerative disc disease, left upper extremity osteoarthritis, headaches, and obesity. (A.R. 20–21.) The ALJ concluded that none of Plaintiff's impairments or combination of impairments met or medically equaled the requirements of any impairment identified in the Listing of Impairments detailed in 20 C.F.R., Part 404, Subpart P, Appendix 1. (A.R. 22.).

The ALJ then determined that prior to August 3, 2012—the date Plaintiff became

disabled—Plaintiff retained the RFC to perform light work,[2] except that she could only occasionally climb ramps and stairs, balance, crouch and stoop, but could never kneel or crawl; should have no exposure to hazards, such as unprotected heights and dangerous, moving machinery; could not operate motor vehicles or leg or foot controls with her left lower extremity; could perform gripping and grasping no more than frequently with the upper left extremity; and, due to pain, headaches, and the side effects of medications, was limited to simple, unskilled work. (A.R. 23–24.) The ALJ further determined that as of August 3, 2012, Plaintiff was limited to sedentary work as defined in 20 C.F.R. §§ 404.1567(a) and 4.4.416.967(a). (A.R. 28.) The ALJ determined that prior to August 3, 2012, Plaintiff could perform her past relevant work as a stock clerk and a hand packager. (A.R. 29.) Finally, the ALJ found that beginning on August 3, 2012, there were no jobs that existed in significant numbers in the national economy that Plaintiff could perform, thus rendering Plaintiff disabled. (A.R. 30.)

## DISCUSSION

**I.    The ALJ's RFC Finding Is Supported By Substantial Evidence**

Plaintiff contends that, for a number of reasons, the ALJ's RFC finding was not supported by substantial evidence. The ALJ is ultimately responsible for determining a claimant's RFC, *see Coldiron v. Comm'r of Soc. Sec.*, 371 F. App'x 435, 439 (6th Cir. 2010) (citing 42 U.S.C. § 423(d)(5)(B)), but the claimant is required to provide information to establish the extent of his impairments. *See Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 391 (6th Cir. 1999).

Plaintiff first argues that based on her age and lack of transferrable skills, Medical - Vocational Rule 201.12 would require a finding of disability if Plaintiff were limited to sedentary

---

[2] Light work involves lifting "no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds." 20 C.F.R. § 404.1567(b). Furthermore, work is considered "light" when it involves "a good deal of walking or standing," defined as "approximately 6 hours of an 8-hour workday." *Id.*; *see also* Titles II and XVI: Determining Capability to do Other Work - the Medical-Vocational Rules of Appendix 2, SSR 83-10, 1983 WL 31251 at *6 (S.S.A., 1983); *Van Winkle v. Comm'r of Soc. Sec.*, 29 F. App'x 353, 357 (6th Cir. 2002).

work. *See* 20 C.F.R. Part 404, Subpart P, App. 2. Citing *Love v. Commissioner*, 605 F. Supp. 2d 893 (W.D. Mich. 2009), Plaintiff contends that the ALJ erred in concluding that she could perform light work, rather than sedentary work, because Plaintiff presented evidence that she received a medical order for a cane in 2007 when she was treated for left knee pain, and she continued to use the cane until she lost it when she moved to Michigan in 2008. Plaintiff asserts that she was unable to replace the cane, "apparently due to beleaguered family finances." (Dkt. # 12 at Page ID#568.) The instant case is distinguishable from *Love* because unlike *Love*, it is not undisputed in this case that Plaintiff required use of a cane or a hand-held assistive device to ambulate prior to August 3, 2012. *See id.* at 907 (noting the ALJ's limitation for use of a handheld assistive device). The ALJ's conclusion that Plaintiff did not require a cane prior to her surgery was amply supported. Plaintiff testified at the hearing that she had not used a cane during the three years prior to her surgery, but said that she used a cane following her surgery. (A.R. 23, 58–60.) In addition, none of Plaintiff's medical providers prescribed Plaintiff a cane during that time. Moreover, during 2011, various medical sources noted that Plaintiff could ambulate without a walking device, (A.R. 348, 511), and Dr. Gostine, who treated Plaintiff for pain, recommended that Plaintiff walk 40 minutes per day. (A.R. 402.) Finally, although Plaintiff suggests that she was unable to afford a cane, she points to no evidence indicating that she was unable to afford one during the pertinent time.

Plaintiff next suggests that the ALJ failed to consider how her obesity contributed to greater limitations when combined with her knee and back impairments. The Court disagrees. The ALJ found that Plaintiff's obesity was a severe impairment, (A.R. 20–21), and at step three concluded that it did not cause or contribute to listing-level impairments, although he observed that Plaintiff's "weight is likely to cause some additional pain and problems with pain and problems with mobility." However, the ALJ found no evidence that Plaintiff's obesity affected her ability to ambulate effectively. (A.R. 23.) In his RFC finding, the ALJ specifically noted that Dr. Gostine indicated

that Plaintiff's obesity could reasonably exacerbate her knee pain. (A.R. 26.) Ultimately, the ALJ incorporated limitations into Plaintiff's RFC to account for her obesity, and back and knee pain. (A.R. 27.) Plaintiff fails to point to any evidence showing that her obesity imposed additional limitations or that the ALJ failed to properly evaluate its limiting effects. In short, the ALJ "explain[ed] how [he] reached [his] conclusions on whether obesity caused any . . . limitations." SSR 02-Ip, 2002 WL 34686281, at *7.

Plaintiff argues that the ALJ failed to fully account for the limiting effects of Plaintiff's pain medications, which Plaintiff had taken for a number of years. The ALJ noted that prior to the knee replacement surgery, Plaintiff had taken several "powerful pain medications, including morphine, Vicodin, and Flexeril, which could reasonably cause side effects including drowsiness and loss of focus." (A.R. 27.) The ALJ concluded that Plaintiff's headaches, use of narcotic medications, and history of non-severe depression supported a limitation to simple, unskilled work. (*Id.*) Plaintiff argues, however, that the ALJ failed to consider her testimony that when she takes her medication she sleeps all day and is unable to perform daily activities. While Plaintiff testified that her medication makes her sleep, such testimony related to Plaintiff's current functioning, following the August 2012 knee replacement. (A.R. 60–61.) The ALJ noted that after August 3, 2012, Plaintiff was also taking Oxycodone and Valium, which caused her to do little other than sleep most of the day. (A.R. 28.) Plaintiff points to no evidence suggesting her medications caused such limitations prior to August 2012. Thus, the ALJ properly assessed the limiting effects of Plaintiff's medications.

Plaintiff also contends that the ALJ failed to properly evaluate her back impairment. Plaintiff notes that the medical evidence shows that she received a pain injection for back pain in 2011 and that in 2011 the state consultative examiner observed that Plaintiff walked with a wide-

based gait and had difficulty walking, and the examiner found positive straight leg raising. Plaintiff further asserts that notes from Dr. Krol, Plaintiff's primary care physician, show consistent complaints of pain and treatment. The ALJ found that Plaintiff's lumbar degenerative disc disease was a severe impairment but did not meet or medically equal a listed impairment because there was no evidence of nerve root compression, spinal arachnoiditis, or lumbar spinal stenosis. (A.R. 23.) The ALJ noted that a May 10, 2010 x-ray of Plaintiff's lumbosacral spine and an October 7, 2010 MRI showed mild arthritic changes in Plaintiffs back, but revealed no evidence of nerve root compromise or impingement or other signs of neurological compromise that would indicate a need for further limitations. (A.R. 25.) The ALJ observed that Plaintiff's treatment history with Dr. Krol was consistent with the radiological evidence showing that Plaintiff's back impairment was not more severe than the limitations specified in the RFC. For example, on May 10, 2010, Dr. Krol found that Plaintiff was in no distress, her range of motion was normal, she had no CVA tenderness, her neurological examination was grossly normal, and the x-ray of her lumbar spine revealed mild degenerative changes. (A.R. 327–28.) On February 11, 2011, Plaintiff reported that her current back pain started in the last seven days. Dr. Krol found that straight leg raising was positive for back pain, but she reported that Plaintiff's lumbar back was normal. (A.R. 323–24.) And, on June 27, 2012, Dr. Krol reported that Plaintiff was in no distress and had no sensory deficits. (A.R. 394.) Finally, the ALJ noted that the record contained no other evidence showing that Plaintiff exhibited decreased strength, sensation, or reflexes that would suggest a neurological dysfunction. (A.R. 25.) In light of this evidence, as well as Plaintiff's failure to point to any evidence contrary to the ALJ's findings, the Court finds that the ALJ's RFC determination was well supported.[3]

---

[3] Plaintiff also cites *Gayheart v. Commissioner of Social Security*, 710 F.3d 365 (6th Cir. 2013), for the proposition that records from treating and examining sources must be given proper weight. As Plaintiff acknowledges, *Gayheart* concerned the weighing of medical opinions which, Plaintiff concedes, were not at issue before the ALJ.

In sum, Plaintiff has failed to show that the ALJ's RFC determination was not supported by substantial evidence.  Although Plaintiff contends that the ALJ should have found her to be disabled at an earlier time, Plaintiff has not pointed to any evidence in the record showing that she was in fact disabled prior to August 3, 2012.

## II.   The ALJ Properly Evaluated Plaintiff's Credibility

An ALJ may discount a claimant's credibility where the ALJ "finds contradictions among the medical records, claimant's testimony, and other evidence."  *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 531 (6th Cir. 1997).  "It [i]s for the [Commissioner] and his examiner, as the fact-finders, to pass upon the credibility of the witnesses and weigh and evaluate their testimony." *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 536 (6th Cir. 2001) (quoting *Myers v. Richardson*, 471 F.2d 1265, 1267 (6th Cir. 1972)).  The court "may not disturb" an ALJ's credibility determination "absent [a] compelling reason."  *Smith v. Halter*, 307 F.3d 377, 379 (6th Cir. 2001).  The threshold for overturning an ALJ's credibility determination on appeal is so high, that in recent years, the Sixth Circuit has expressed the opinion that "[t]he ALJ's credibility findings are unchallengeable," *Payne v. Comm'r of Soc. Sec.*, 402 F. App'x 109, 113 (6th Cir. 2010), and that "[o]n appeal, we will not disturb a credibility determination made by the ALJ, the finder of fact . . . [w]e will not try the case anew, resolve conflicts in the evidence, or decide questions of credibility."  *Sullenger v. Comm'r of Soc. Sec.*, 255 F. App'x 988, 995 (6th Cir. 2007).  Nevertheless, an ALJ's credibility determinations regarding subjective complaints must be reasonable and supported by substantial evidence.  *Rogers v. Commissioner of Social Security*, 486 F.3d 234, 249 (6th Cir. 2007).

In assessing Plaintiff's credibility, the ALJ first cited the two-part test set forth in *Duncan*

---

Plaintiff nonetheless contends that *Garyheart* dictates that records from treating and examining physicians must be given appropriate weight.  Even assuming that such is true, Plaintiff fails to show that the ALJ did not give appropriate weight to her treating and examining physicians' records.

9

*v. Secretary of Health and Human Services*, 801 F.2d 847 (6th Cir.1986), and then discussed Plaintiff's March 2011 Function Report and Plaintiff's hearing testimony. (A.R. 24.) The ALJ found Plaintiff statements concerning the intensity, persistence, and limiting effects of her impairments fully credible with regard to the period after August 3, 2012, but less than fully credible prior to that time. (*Id.*) The ALJ considered the objective medical evidence and found that Plaintiff's complaints of disabling pain were not supported in light of Plaintiff's minimal complaints and lack of ongoing treatment with regard to her left upper extremity impairment. (A.R. 25.) The ALJ also noted that Plaintiff's complaints were inconsistent with her pre-surgery activities that she reported. For example, the ALJ noted, on her Function Report Plaintiff said that she could perform normal household chores, although it took her longer to perform them, and at her physical examination on May 10, 2010 Plaintiff indicated that she was "moderately active" and played motion sensitive video games. (A.R. 26, 327.) In addition, the ALJ considered Plaintiff's activities as a chore helper and childcare provider since her alleged onset date, which indicated some ability to perform light work. (A.R. 27.)

As the foregoing shows, the ALJ found contradictions among the medical records, plaintiff's testimony, and other evidence. *See Walters*, 127 F.3d at 531. The ALJ's credibility determination is reasonable and supported by substantial evidence. *Rogers*, 486 F.3d at 249. Plaintiff contends, however, that the ALJ should have credited Plaintiff's good work history as indicative of worsening of Plaintiff's impairments. The ALJ recognized that the fact that Plaintiff had worked consistently tended to show that her claims were credible, but he noted that Plaintiff left her longest-term job, at Wal-Mart, not because of disabling pain but because she relocated to Michigan in 2008. Moreover, as noted, the ALJ found that Plaintiff's activities as a chore helper and a childcare provider suggested an ability to do light work. (A.R. 27.)

Citing the Seventh Circuit's decision in *Bjornson v. Astrue*, 671 F.3d 640 (7th Cir. 2012), Plaintiff contends that the ALJ's use of boilerplate credibility language indicates a lack of substantial evidence to support the ALJ's credibility conclusions. Even if *Bjornson* were binding on this Court, which it is not, the concerns the Seventh Circuit raised in that case are not present in the instant case, even though the ALJ in the instant case recited similar language, because the ALJ gave specific reasons for his credibility determination. *See Delp v. Comm'r of Soc. Sec.*, No. 1:13-CV-840, 2014 WL 4748696, at *6 (W.D. Mich. Sept. 24, 2014) (noting that "the ALJ's use of the language in this case is not, in and of itself, grounds for reversal because the ALJ also gave specific reasons for rejecting plaintiff's credibility").

## CONCLUSION

For the foregoing reasons, the Court will affirm the Commissioner's decision to deny Plaintiff disability insurance benefits.

An Order consistent with this Opinion will enter.


Dated: September 30, 2015                              /s/ Gordon J. Quist
                                                      GORDON J. QUIST
                                                UNITED STATES DISTRICT JUDGE